UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO. 4:13-10072-CIV-KING

EYEPARTNER, INC., a Delaware Corporation, licensed
to do business in Florida,

    Plaintiff,

v.

KOR MEDIA GROUP LLC d/b/a GLOVUE,
a Nevada Limited Liability Company, and
ROBERT KORMAN, an individual, and
NIC MITCHELL, an individual

    Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

This action involves allegations of copyright infringement and trade secret violations related to Defendants' use of TikiLIVE v3.2, software that facilitates video distribution over the Internet. Plaintiff alleges to be the owner of the copyrighted TikiLIVE software and to have granted Defendants a limited license to use the software but not modify or access the encrypted code. Plaintiff's ten-count Amended Complaint alleges three federal claims for willful copyright infringement (Count I), destruction of copyright management information (Count II), and circumvention of copyright protection systems (Count III); and state law claims for trade secret misappropriation (Count IV), conversion (Count V), unjust enrichment (Count VI), trespass to chattels (Count VII), unfair competition (Count VIII), constructive trust (Count IX), and fraud in the

1

inducement (Count X). On April 30, 2013, Plaintiff filed a Motion for Preliminary Injunction on the basis of Defendants' alleged infringement, circumvention, and trade secret misappropriation. The Motion asks this court to enjoin Defendants "from maintaining, using, distributing, marketing, disclosing, benefiting from, promoting, selling, offering for sale and licensing EyePartner's copyrighted TikiLIVE software platform, and engaging in acts of unfair competition based upon Defendants rogue efforts to clandestinely decrypt EyePartner's confidential intellectual property and subsequent unlicensed use in direct competition." After considering evidence and argument presented over seven days, the Court agrees and grants the motion.

## I. PROCEDURAL HISTORY

Judge James Lawrence King, who was randomly assigned the case, treated this matter as urgent and initially set a preliminary injunction hearing for May 9. Per Plaintiff's request, and to allow time to review Defendants' allegations that the court lacked jurisdiction over this case, the hearing was reset for the two-week period beginning June 17, 2013. Meanwhile, Judge King granted Plaintiff's request for expedited discovery and also adjudged Defendants' jurisdictional attack to be without merit. After a lengthy calendar call on June 13, at which the parties indicated that they needed several days to present evidence supporting their positions, the preliminary injunction hearing was set for Monday morning, June 17. Plaintiff's presentation of evidence lasted three days; Defendants then presented evidence and arguments before Judge King, when a recess was required due to Judge King's sudden medical issues. This Court, in its capacity as Chief Judge, after reading the entire transcript of the five days of

evidence and argument, scheduled the remainder of the preliminary hearing for July 11 and 12, 2013. All parties consented to the undersigned presiding during Judge King's absence due to his medical emergency.

In Response to Plaintiff's Motion, as well as at the calendar call and several times during the preliminary injunction hearing, Defendants offered to agree to a preliminary injunction prohibiting Defendants' use of the original TikiLIVE v3.2 code that Plaintiff licensed.[1] Plaintiff did not accept the offer because Defendants' proposed injunction would only prohibit Defendants from using the original code that Plaintiff licensed to Defendants and require Defendants to return the unencrypted code to Plaintiff; it would not limit Defendants' use of code that Plaintiff alleges is derivative of Plaintiff's copyrighted work. Indeed, it is apparent to the Court that Defendants made but an empty offer. It would provide Plaintiff with no meaningful relief. Accordingly, the Court turns first to the jurisdictional arguments made by Defendants and then to the merits of Plaintiff's Motion for Preliminary Injunction.

## II. STANDING

Defendants first claim that Plaintiff, as a Delaware corporation, lacks standing because it failed to obtain a certificate of authority to do business in Florida.

EyePartner is a corporation formed and organized with the state of Delaware on March 15, 2007. CEO Loretta McCarty testified that since its formation, EyePartner has

---

[1] To be sure, Defendants offered to "stipulate bilaterally to the non-use" of Plaintiff's code, (DE #21, p. 19), but, regardless of label, the effect would be the same as an injunction prohibiting use of the code.

remained in good standing with the Delaware secretary of state. Likewise, Ms. McCarty testified that she, along with her husband Tim Green, is a 50/50 owner of EyePartner.

In August 2007, EyePartner sought to apply with the Florida Department of State Division of Corporations to transact business in that state and to comply with Florida Statute 607.1503. Ms. McCarty testified that she used a third-party incorporation service to apply to transact business in Florida. In applying to transact business, the incorporation service advised that a Panama City, Florida-based optometry clinic called "Eye Partners P.C." had taken that name and that "EyePartner" may be unavailable—requiring an alternative corporate name to be adopted for purposes of transacting business. When EyePartner filed to transact business in Florida, it appropriately and correctly listed "EyePartner Inc." as the name of the corporation that would be transacting business and listed "Streaming Base" as the alternative corporate name.

EyePartner listed its federal tax identification number, 20-8614411, as the tax number associated with the company transacting business in Florida. Indeed, Streaming Base and EyePartner used the same tax identification number. Since being licensed to transact business in Florida, each and every year EyePartner filed an annual report with the State of Florida. EyePartner has a bank account in Marathon, Florida under the name "EyePartner" and is likewise licensed to transact business in Monroe County under the name EyePartner as shown in the Monroe County, Florida Business Tax Receipts for 2011 through 2013.

In transacting business with Defendant Kor Media Group, the underlying contracts did incorrectly identify EyePartner as a "Florida corporation" and a "Florida company."

4

The Court accepts Ms. McCarty's testimony that this error was not meant to deceive anyone. This Court agrees with Judge King's initial ruling that Plaintiff has standing to sue.

## III. PRELIMINARY INJUNCTION ANALYSIS

The standard for granting a preliminary injunction is well-established. The moving party bears the burden of demonstrating (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury absent an injunction, (3) that the balance of hardships favors the movant in that the harm suffered absent an injunction would exceed the harm suffered by the non-movant if the injunction is granted, and (4) an injunction would not be adverse to the public interest. *Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011). The first prong is the most important, and "substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). This standard applies equally to intellectual property cases. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); *Peter Letterese and Associates, Inc. v. World Institute of Scientology Enterprises, Int'l.*, 533 F.3d 1287, 1323 (11th Cir. 2008).

Under the circumstances in this case and the factual record before the Court, Plaintiff has met its burden of showing it is entitled to the injunction it seeks. There is sufficient evidence to find that Defendants were unhappy with the quality of the product that Defendant Kor Media Group had licensed from Plaintiff and that, rather than pay for the additional application programming interface ("API") service that might have addressed Defendants' concerns, they chose to make their own modifications to

5

Plaintiff's code. At the jury trial, Plaintiff is likely to prove that Defendants then violated at least two of Plaintiff's exclusive rights under Section 106 of the Copyright Act: the right to copy the code and the right to make works derivative of the code; that Defendants violated the Copyright Act's anti-circumvention prohibition by decrypting the code; and that Defendants misappropriated trade secrets.

To obtain an injunction for copyright infringement, Plaintiff must prove that it is the owner of a valid copyright and that Defendants infringed that copyright. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "[T]he certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Plaintiff attached as Exhibit A to the Motion for Preliminary Injunction the Certificate of Registration, dated March 26, 2013, for TikiLIVE v3.2, which was published in May 2012. That certificate lists Tim Green, Plaintiff's chief information officer and co-owner, as the author and Plaintiff as the assignee. Green testified that all other contributors to the work were employees of Plaintiff working within the scope of their employment; thus their contributions were as a work for hire and do not grant upon the additional contributors joint author status. *See* 17 U.S.C. § 201(b).

As for infringement, it is undisputed from the record that Defendants copied and modified Plaintiff's copyrighted source code.[2] The only question is whether Defendants'

---

[2] Among numerous pieces of evidence, Defendants admitted in Response to the Motion for Preliminary Injunction to downloading the source code and decrypting it and Defendant Mitchell testified to copying decrypted files to his laptop and modifying them.

acts were within the scope of the license agreement. While Section 1.12 of the contract appears to have given Defendants the right to copy the encrypted source code, Section 7.3 expressly prohibits acts that "modify, translate, reverse engineer, decompile, disassemble . . . or create derivative works." The evidence indicates that Defendants copied significant portions of Plaintiff's copyrighted code and modified it to create their own competing software, and such modifications clearly constitute the making of a derivative work. *See* 17 U.S.C. § 101; *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 938–39 (N.D. Cal. 2009).

Defendants attempt to defeat a preliminary injunction on infringement by arguing that their unauthorized uses of the TikiLIVE source code should be excused under copyright's fair use doctrine. But this defense is not available to Defendants. Fair use is an equitable defense, codified in Section 107 of the Copyright Act, that excuses liability for what otherwise would constitute copyright infringement. *Stewart v. Abend*, 495 U.S. 207, 236 (1990). Relying heavily upon *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1539 n.18 (11th Cir. 1996), and *Sega v. Accolade*, 977 F.2d 1510 (9th Cir. 1992), Defendants argue that it was a fair use to disassemble the source code so that it could be modified to make the program function as they wished. However, such a defense could only absolve liability as to willful copyright infringement but not Counts II and III regarding regarding violations of the Digital Millennium Copyright Act (discussed below). *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435–39 (2d Cir. 2001). Moreover, here fair use is inapplicable to Count I because, unlike in *Bateman* and *Sega*, the Defendants contractually waived their rights to modify the code. *See Bowers v. Baystate*

7

*Technologies, Inc.*, 320 F.3d 1317, 1325–26 (Fed. Cir. 2003) (articulating that "private parties are free to contractually forego the limited ability to reverse engineer a software product under the exemptions of the Copyright Act").

The Copyright Act, as amended by the Digital Millenium Copyright Act, also grants authors additional rights to technologically limit access to copyrighted works. *See* 17 U.S.C. § 1201. To obtain an injunction for circumvention of copyright technological protections, Plaintiff must show that it employed a technological measure to protect the TikiLIVE v3.2 source code it provided Defendants and that Defendants circumvented that technology. Plaintiff does not need to prove that Defendants were contractually prohibited from decrypting; the law is sufficient. It is undisputed that Plaintiff used an encrypting technology called IonCube to prevent Defendants from accessing the human-readable language of the source code, and Defendant Mitchell testified to using the "deZender" program to decrypt the code without Plaintiff's permission. The plain language of the statute and case law support finding therefore that Defendant Mitchell violated the anti-circumvention provision. *See* 17 U.S.C. § 1201(a)(3)(A); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317 (2d Cir. 2000). It does not matter whether Plaintiff utilized "a strong means of protection," only that Defendants circumvented Plaintiff's protective measure without consent. *Reimerdes*, 111 F. Supp. 2d at 318.

Defendants' argument that decrypting the encrypted TikiLIVE source code was within the scope of their license defies credulity.[3] Common-sense suggests that Plaintiff did not intend to give Defendants such authority by providing access to only code that could not be meaningfully read and understood by a person without decryption software. Moreover, Section 7.3 of the license agreement expressly state that Defendants lacked the rights to alter or delete the code. That Plaintiff gave Defendants access to the encrypted source code is irrelevant. *See Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 214 (3d Cir. 2002).

Finally, to obtain an injunction for trade secret misappropriation, Plaintiff must show under Florida law that Defendants misappropriated information of economic value that is not readily ascertainable by proper means and is the subject of Plaintiff's reasonable efforts to keep secret. *Greenberg v. Miami Children's Hospital Research Institute, Inc.*, 264 F. Supp. 2d 1064, 1076 (S.D. Fla. 2003). Testimony during the preliminary injunction hearing demonstrates that Plaintiff employed reasonable efforts to keep the TikiLIVE v3.2 code secret. Plaintiff's expert witness, Victor Johnson, testified that IonCube is the industry standard for encryption,[4] and Defendants needed a login and password to get on the server that hosted Plaintiff's encrypted code. These are reasonable

---

[3] Additionally, the Court finds that Defendant Mitchell was not a credible witness for Defendants. Representative of Defendant Mitchell's obfuscating answers on cross-examination was his effort to construe Defendants' Exhibit 151—a portion of the encrypted code—as human readable because it contained letters, numbers and symbols common to the English language. In fact, no one could know the meaning of the encrypted source code unless it was decrypted, and thus Plaintiff having provided Defendants access to the encrypted code was not the same as providing Defendants with a human-readable form of the source code.
[4] Defense counsel stated at the start of the hearing on July 11, 2013 that Defendants had no objection as to Mr. Johnson's credibility.

efforts to protect software as a trade secret. *See Superchips, Inc. v. Street & Performance Electronic, Inc.*, No. 6:00–CV–896–ORL31KRS, 2001 WL 1795939, at *5 (M.D. Fla. Dec. 6, 2001). Additionally, the evidence presented supports a finding that Defendants misappropriated this trade secret by decrypting and downloading hundreds of the TikiLIVE source code files. Moreover, Defendant Mitchell admitted that he was able to modify Plaintiff's decrypted code to make an improved program that Defendant Kor Media Group then marketed. That qualifies as a misappropriation of Plaintiff's trade secret. *See Jadael Inc. v. Elliot*, No. 6:05–CV–1623–Orl–DAB, 2007 WL 2480387, at *8 (M.D. Fla. Aug. 29, 2007). Accordingly, at trial Plaintiff has a likelihood of success on its trade secret misappropriation claim.

The Court also finds that the three remaining prongs of the preliminary injunction analysis weigh in Plaintiff's favor. Irreparable harm is presumed on the circumvention and trade secret claims, *see C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 641 F. Supp. 2d 913, 953 (N.D. Cal. 2009); *Wit Walchi Innovation Technologies, GmbH v. Westrick*, No. 12–CIV–20072–COHN, 2012 U.S. Dist. LEXIS 7933, at *9. (S.D. Fla. Jan. 24, 2012). Beyond the presumption, irreparable harm also is demonstrated in the record as to those claims and the copyright infringement claim based on Plaintiff's lost licensing revenue from Defendants, the potential for Defendants to compete against Plaintiff with their derivative code, and the possibility that Defendants will share Plaintiff's unencrypted code with other potential customers or competitors.

Because Plaintiff has proven a likelihood of success on the merits, the third and fourth prongs also inform granting the preliminary injunction. On the balance of harms, it

is well-established in the copyright context that "a company cannot build a business on infringements and then argue that enforcing the law will cripple that business." *C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (quoting *CBS, Inc. v. Primetime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1345 (S.D. Fla. 1998)); *see also Adobe Systems, Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996) ("Because defendant is engaged in infringement, the only hardship he will suffer as a result of an injunction is court-ordered compliance with the copyright laws. Thus, defendant will lose only profits derived from illegal distribution of plaintiffs' software."). And, finally, where, as here, a plaintiff has a likelihood of success on a copyright infringement claim, preliminary injunction serves the "public interest because the public interest lies with protecting the rights of copyright owners." *CBS Broadcasting, Inc. v. EchoStar Communications Corp.*, 265 F.3d 1193, 1198 (11th Cir. 2001); *see also C.B. Fleet*, 510 F. Supp. 2d at 1084 ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works.").

The Court finds Defendants' other arguments that an injunction would be improper[5] to be without merit. First, Plaintiff has met its burden of showing it is the holder of a validly registered copyright that Defendants allegedly infringed, and the Court finds unavailing Defendants' argument that Plaintiff lacks the authority under state corporations law to bring the above-styled action. Second, Defendants' argument that Plaintiff has unclean hands based on the delivery of a defective product cannot be

---

[5] These arguments were made in Defendants' Response to the instant Motion; Defendants' Pretrial Brief (DE #78); and pending motions to Stay (DE #30), Reconsider (DE #31) and Strike or Dismiss (DE #42).

sustained based on the evidence before the Court, even accepting the Supplemental Declaration of David White, the acting general manager and acting chief technology officer of Defendant Kor Media Group.

Finally, the Court notes that Defendants' argument that Plaintiff's "failure to either discuss or make provisions for a bond is fatal", (DE #21, p. 21), is unsupported by the case Defendants cite, *VAS Aero Services, LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1363–64 (S.D. Fla. 2012). District Court judges have broad discretion over whether to require the posting of a bond by the party moving for the injunction, *Popular Bank of Fla. v. Banco Popular de Puerto Rico*, 180 F.R.D. 461, 463 (S.D. Fla. 1998), and that decision can be made after a preliminary injunction has been entered. *See Carillon Importers, Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). Moreover, the burden is on Defendants, as the party seeking the security, to propose a bond and "establish a rational basis for the amount." *VAS Aero Services*, 860 F. Supp. 2d at 1364.

In closing argument, Defendants' counsel suggested a $1 million bond while Plaintiff contested that a $5,000 to $10,000 bond was sufficient.

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED** and **ADJUDGED** that Plaintiff's Motion for Preliminary Injunction be **GRANTED**. Defendants Kor Media Group, Korman and Mitchell are enjoined as follows:

1. Defendants and all those acting in concert therewith, including but not limited to Brian Crumrine, Peter Eichhorst Jr., Paul Gregoire Kor Technologies LLC, Rainbow Technology Management LLC, the account owner at Host Gator, the account

owner of the server account at Beanstalk, be and are hereby preliminary enjoined from (a) infringing U.S. Copyright Registration TX 0007655552 (the Copyright-in-Suit); (b) copying, selling, offering for sale, using, maintaining, employing, modifying, accessing, altering, making derivative works from, or otherwise benefiting from the Copyright-in-Suit; (c) copying, selling, offering for sale, using, maintaining, employing, modifying, accessing, altering, making derivative works from, or otherwise benefiting from any of Plaintiff's source code and/or decrypted code received, obtained, downloaded from Plaintiff, transferred from Plaintiff, or in Defendants' care, custody or control; (d) using, possessing, exploiting, selling, offering for sale, reselling, transferring any proprietary and confidential information of Plaintiff, as well as any information that may rise to the level of a trade secret as defined under Florida Statute Ch. 688 et al, (e) improperly accessing Plaintiff's computer systems, servers, and electronic storage devices, including improper circumvention of Plaintiff's copyright protection systems, reasonable technological measures, and related prevention technologies in violation of 17 U.S.C. 1201(a); (f) entering upon any of Plaintiff's computers, servers or systems, including but not limited to using any log-in credentials and/or accessing information for purposes of gaining entry into any of Plaintiff's computers, servers, or systems; (g) unfairly competing against Plaintiff with the use of the Copyright-in-Suit, any of Plaintiff's trademarks, trade dress, and/or indicia, including but not limited to unfairly competing with Plaintiff through the use, possession, exploiting, selling, offering for sale, reselling, altering, modifying, changing, transferring any proprietary and confidential information

of Plaintiff, including but not limited to Plaintiff's source code and/or decrypted code received, obtained, downloaded from Plaintiff.

2. No later than July 25, 2013, Defendants shall identify by name, make, model, location, and serial number any and all computers, servers, electronic storage devices, or any related systems that contain, or through which were transferred any computer source code, decrypted code, directories, files, libraries, and any related data provided by or received from Plaintiff (including but not limited to the TikiLIVE platform, any and all modules) – which shall include and certainly not be limited to the HP laptop of Mitchell, the data contained on the Host Gator server account, and the data contained in the Beanstalk server account, and any and all servers used in the ordinary course of business by Defendants or their agents (such as those servers used by Brian Crumrine, Peter Eichhorst Jr., Paul Gregoire, Kor Technologies LLC, and Rainbow Technology Management LLC).

3. No later than July 31, 2013, Plaintiff and Defendants shall submit and propose a list of possible third-party neutral computer forensics experts for purposes of imaging those computers, servers, electronic storage devices, or any related systems.

4. No later than August 7, 2013, the Parties shall stipulate and agree to a set of one or more third-party neutral computer forensics experts; failing which this Court shall appoint one or more neutral computer forensics experts of its choosing and accord.

5. No later than August 15, 2013, the Defendants (as well as Brian Crumrine, Peter Eichhorst Jr., Paul Gregoire, Kor Technologies LLC, and Rainbow Technology Management LLC) shall tender, make available, and provide access to all computers,

servers, electronic storage devices, or any related systems in response to Paragraph 2 to the third-party neutral forensics expert which shall use reasonable technological measures to image and preserve such data.

6. No later than August 23, 2013, the Defendants shall prepare and serve on Plaintiff a detailed written log of any files, data, or materials that they suggest constitute privileged information or information that is not tangentially relevant to the matters as pled in the Amended Complaint. Defendants shall segregate information classified in good faith as privileged or not tangentially relevant to the suit, by the Court or assigned Magistrate Judge on proper motion.

7. As soon as the review contemplated in Paragraph 6 is completed by Defendants, the one or more neutral forensics experts shall provide to Plaintiff by August 30, 2013, under a tier-two designation under the Court's previously entered Protective Order (DE #39), the complete image (less information segregated by Defense counsel in good faith as privileged or not tangentially relevant) of each computer, server, electronic storage devices, or any related systems obtained by the neutral computer forensics expert(s).

8. A bond under Federal Rule of Civil Procedure 65 shall be required to be posted by Plaintiff in the amount of $50,000 as a condition for this injunction order.

9. The Court reserves jurisdiction over this matter to enter such additional orders, or modifications to this Order as may be appropriate.

10. The Court will appoint in a separate order a Special Master who will oversee compliance with the order and who will also report to the Court any discovery disputes during this litigation.

It is further **ORDERED** and **ADJUDGED** that the pending Motion to Stay (**DE #30**), Motion for Reconsideration (**DE #31**), Motion to Strike or, in the Alternative, Dismiss First Amended Complaint (**DE #42**), Defendants' Motion in Limine (**DE #46**), and Motion for Clarification (**DE #71**) are **DENIED as moot**. Defendants **SHALL Answer** the First Amended Complaint by August 15, 2013.

**DONE AND ORDERED** in Miami, Florida, this _15_ day of July, 2013 at Miami, Florida.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE
for JUDGE JAMES LAWRENCE KING

Cc: All Counsel of Record
The Hon. Chris M. McAliley